UNITED STATES, Appellee,

v.

Corporal Charles A. FELTON, 253–13–1123, United States Army, Appellant.

ACMR 8901517.

U.S. Army Court of Military Review.

17 Aug. 1990.

For Appellant: Captain Jeffrey J. Fleming, JAGC, Captain W. Renn Gade, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain James K. Reed, JAGC (on brief).

Before FOREMAN, JOHNSON and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of assault with intent to commit sodomy, communicat-

ing a threat, and impersonating a Criminal Investigation Command agent, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982). The approved sentence provides for a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to Private E1.

Betty W testified for the prosecution that she met the appellant in early September 1988. Her car had stalled on Fort Stewart and the appellant offered her a ride, asked her for her telephone number, and gave her his unit telephone number. About two weeks later, Betty called the unit and left a message for the appellant that she had called. Sometime in mid-September, the appellant and Betty met as she was leaving a grocery store. The appellant again asked if she would like to "go out" later on. Betty gave the appellant her telephone number. A few days later Betty agreed to go out with the appellant but then changed her mind at the last minute. About the 20th or 23d of September, the appellant called Betty and expressed anger at having seen her talking with another man at a club. He then asked to speak to Betty's sister, Barbara W.

Barbara W testified that the appellant told her he was a CID agent and that he had "paperwork" showing that she had been "fooling around" on her husband. The appellant told Barbara that he wanted to meet with her to "clear the matter up." The appellant told Barbara to meet him at a trailer park, but she refused. The appellant later testified that he used the trailer park for his extramarital sexual activities. The appellant then told Barbara that, if she did not want to be seen in the trailer park, she should meet him at a local food store, "or suffer the consequences." Barbara interpreted "the consequences" to be informing her husband about the evidence of her infidelity.

The conversation with Barbara W was the basis of the charge of impersonating a CID agent. In his testimony on the merits, the appellant denied that the conversations with Betty and Barbara W occurred.

Mrs. D testified that on 3 October 1988, while she was driving to work, the appellant pulled his car alongside hers and told her to "pull over" because her car was on fire. Subsequently, the appellant convinced her to pull onto a side road and then struck her in the face, choked her, threw her to the ground, threatened to kill her, and attempted to have anal intercourse with her.

The appellant testified that he was having an affair with Mrs. D, that they previously had sexual intercourse in a friend's trailer, that Mrs. D initiated the meeting and suggested that they "do it" in his car. When the appellant responded that "only whores and bitches do it in a car," Mrs. D responded with ethnic slurs, grabbed and scratched him, and struck him with her umbrella. The appellant stated that Mrs. D fell into the mud when he pushed her away. The incident with Mrs. D was the basis of the charges of assault with intent to commit sodomy and communicating a threat.

The appellant now contends that (1) the military judge erred by failing to find the assault with intent to commit sodomy multiplicious for findings with communicating a threat; (2) the military judge erred by failing to dismiss the allegation of impersonating a CID agent for failing to state an offense; (3) the evidence is insufficient to support a finding of impersonating a CID agent; (4) the military judge erred by improperly instructing on the elements of the offense of impersonating a CID agent; and, (5) the military judge abandoned his impartial role by repeatedly aiding the prosecution and hindering the defense.

## I. MULTIPLICITY

The Specification of Charge I alleges that the appellant assaulted Mrs. D by choking her, throwing her to the ground, dragging and pushing her into the woods, pushing her face into the mud, pulling her pants and panties down, attempting to force his penis inside her anus, and threatening to kill her. The Specification of Charge II alleges that the appellant, at the same time and place, threatened to kill

Mrs. D. The military judge ruled that the specifications were not multiplicious for findings but were multiplicious for sentencing. We hold that the military judge was correct. We find that the facts of this case are similar to *United States v. Baker*, 14 M.J. 361 (C.M.A.1984), and the rationale of that case is applicable to the case before us. To correct the duplicative allegations of the threat to kill, we will delete the threat from the Specification of Charge I. *United States v. Mendez*, 27 M.J. 177 (C.M.A.1988) (summary disposition).

## II. SUFFICIENCY OF IMPERSONATION SPECIFICATION.

 The appellant contends that the specification alleging impersonation of a CID agent is fatally defective and that the military judge erred by failing, *sua sponte*, to dismiss it. On its face, the specification alleges that the appellant declared himself to be a CID agent, informed Barbara W that he had evidence of her adultery, and informed her that she would "suffer the consequences" if she did not meet him later that night. In impersonation cases, an overt act beyond the pretense of authority must be alleged and proven. *United States v. Yum*, 10 M.J. 1 (C.M.A.1980). In the case before us, the specification alleges that the appellant not only pretended to be a CID agent but also used the assumed status of a CID agent in an attempt to intimidate Barbara W into meeting with him later that night. We hold that the specification adequately alleges an offense and that it gave appellant sufficient notice of what to defend against. The assignment of error is without merit.

## III. SUFFICIENCY OF THE EVIDENCE OF IMPERSONATION.

 The appellant also contends that the evidence is insufficient to prove wrongful impersonation of a CID agent. Barbara W testified that the appellant represented himself to be a CID agent, stated that he was investigating allegations of adultery, represented that he had evidence that she was "fooling around," and told her that she would "suffer the consequences" if she did

not meet with him. She construed the "consequences" to be informing her husband of the evidence of her infidelity. The appellant first suggested that they meet at a trailer court which he used for his extramarital sexual liaisons. When Barbara W expressed reluctance to meet him at the trailer court, the appellant suggested that they meet at a food store. We are satisfied that the evidence establishes an overt act beyond mere pretense of authority; it establishes that the appellant used his pretense of authority as a means of intimidating Barbara W into meeting with him. We find that the assigned error is without merit.

## IV. INSTRUCTIONS ON IMPERSONATION.

 The appellant next contends that the military judge incorrectly instructed the court members on the elements of the offense of impersonating a CID agent. The appellant was charged with impersonating a government official, which is a lesser included offense of impersonating a government official with intent to defraud. *See* Manual for Courts–Martial, United States, 1984, Part IV, paragraph 86b [hereinafter MCM, 1984], *United States v. Yum*, 10 M.J. 1, 2 (C.M.A.1980).

 The military judge instructed the members on the elements of the greater offense of impersonating with intent to defraud. Neither counsel objected to the instruction nor asked for additional instructions.

 We hold that the military judge erred by instructing the members on the elements of the greater offense, but the error was harmless. Since simple impersonation is a lesser included offense of impersonation with intent to defraud, the effect of the military judge's error was to hold the prosecution to a higher standard of proof than required by the offense charged. We hold further that the erroneous instruction did not rise to the level of plain error and was waived by the trial defense counsel's failure to object. *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986).

## V. LACK OF IMPARTIALITY

The appellant contends that the military judge abandoned his impartial role by repeatedly aiding the prosecution and hindering the defense. The appellant asserts that the military judge became an advocate for the prosecution by: (1) repeatedly and improperly examining appellant and other witnesses; (2) consistently denying defense counsel's proper objections to evidence; (3) providing strategic advice to the trial counsel; (4) allowing the religious practices and beliefs of appellant, his family, and Mrs. D to become an issue; and (5) instructing the panel members in a biased fashion.

We have carefully examined the military judge's examination of the appellant and other witnesses and find that he did not abandon his impartial role during the trial on the merits. Likewise, we have examined the military judge's rulings on defense objections and find that his rulings were correct and do not reflect partiality toward the prosecution. Accordingly, we find that the first two assertions of bias are without merit.

The alleged "strategic advice" occurred during the voir dire of the court members, Captain B and Sergeant First Class (SFC) M, who both stated that they knew the appellant and had some knowledge of the charges. After voir dire was completed, the following colloquy occurred among the trial counsel, defense counsel, and military judge:

TC: Your Honor, the government has a challenge for cause against Sergeant [M].

MJ: Let me point out a little bit of mathematics to you. There is [sic] presently 11 members, is that correct?

TC: That's correct, Your Honor.

MJ: If you take out Sergeant [M], that leaves 10 members with 3 enlisted, is that correct?

TC: That's correct, Your Honor.

MJ: So you're below quorum, is that correct?

TC: That's correct.

MJ: Do you still want to challenge him for cause ... You see, what you should do probably, is challenge [B] first. If you get him off, then you can take off [M]. If you can't get [B], then you don't want to mess with [M]. If you take [B] off, then you're down to 10 members. If you take [M] off, you're down to 9, but you have 3 enlisted, so there you have a third.

The trial defense counsel objected, and the military judge admitted that he had erred. Then the defense moved for a mistrial, which was denied. After the trial counsel's challenge of Captain B for cause was granted over defense objection, the trial counsel informed the military judge that he had no other challenges for cause. The military judge then asked the defense if they desired to challenge any member for cause, and the trial counsel interjected that he wanted to reconsider his decision on challenges. The military judge replied, "I told you what to do. You didn't follow my advice. So now you're not going to be allowed to reconsider." SFC M was not challenged by either party or the military judge.

The military judge must conduct himself with impartiality and may not assume the role of advocate or partisan. *United States v. Payne*, 31 C.M.R. 41 (C.M.A.1961). We find no error in a military judge advising counsel for either side that a challenge will reduce the court below a quorum. While we agree with the appellant that the military judge should not have advised the trial counsel on the order in which he should make his challenges, we find no bias. Occasional suggestions to counsel who appear unsure of the proper procedure to follow are not unusual. The mere fact that such assistance is given does not make the military judge a partisan advocate. *United States v. Payne*, 31 C.M.R. at 48. In any event, since the trial counsel did not follow the military judge's advice (and was shortly thereafter chastised for not doing so), we find no reasonable possibility of prejudice.

The appellant also contends that the military judge improperly allowed the religious practices and beliefs of the appellant, his family and Mrs. D to become an issue. Prior to entry of pleas, the trial defense

counsel moved to exclude any government evidence that Mrs. D is "a member of the catholic faith, or is a religious person," on the ground that such evidence is irrelevant. The military judge declined to rule on the admissibility of such evidence, but observed, "That if she's presently married, so, therefore, she wouldn't be messing around with somebody if she's, in fact, a good practicing catholic. I think adultery is a sin in the eyes of the catholic church. I would suspect that's why it would become relevant." During the prosecution case, Mrs. D testified that when the appellant stopped her, she was on the way to the post office to mail a parcel to her mother. Over defense objection, the trial counsel asked what was in the parcel, and Mrs. D responded that "[i]t was Holy Water, Virgin Mary and green Rosary and I was mailing it to my mother 'cause in Puerto Rico we celebrate the Months of the Rosary in October, and that day the Rosary was going to be in my mother's house."

The trial counsel also elicited evidence of the appellant's religious practices when a CID agent testified that "[w]e asked Mrs. Felton what Corporal Felton's activities had been during the morning hours on the 3rd, and she indicated to us that he went to work at approximately 5 o'clock in the morning, that he had returned from work at approximately 7 o'clock, and had read the Bible for a few minutes, and then departed the residence back to work."

Mrs. Felton testified on her husband's behalf on the merits. On cross-examination, the trial counsel asked whether the appellant read the Bible on the morning of 3 October, and Mrs. Felton responded, "[h]e does that every morning." A court member submitted a question for Mrs. Felton through the military judge, "[w]hat are your religious practices, where do you go to church?" Mrs. Felton responded that she and her husband are Baptists, that she had not attended church during the 18 months she and her husband had lived at Fort Stewart, but that her husband attends church on Sunday, but "not every Sunday." The military judge then asked, "[w]hy does he read the Bible every day?" and Mrs. Felton answered, "[b]ecause he was

taught—he was raised, you know, his grandmother and them taught him to read the Bible. If you read the Bible, you know, it will give you motivation, you know ... It will give you spirit to drive on."

At the hearing on instructions, the trial defense counsel asked the military judge to reconsider his ruling on the admissibility of the evidence of Mrs. D's religious beliefs, and asked the military judge to prohibit counsel from mentioning religious beliefs in argument on findings. The military judge declined to reconsider his ruling on admissibility but directed counsel not to mention religious beliefs during argument. Notwithstanding the military judge's directive, during the trial counsel's closing argument the trial counsel referred to Mrs. D mailing a package to her mother and commented, "and you remember what was in that parcel." The defense counsel did not object.

Evidence of the religious beliefs of a witness is not admissible to bolster or attack the witness's credibility. MCM, 1984, Military Rule of Evidence 610. The military rule is taken directly from Federal Rule of Evidence 610. MCM, 1984 analysis, page A22-43. The federal rule closely resembles a privilege, and is "probably grounded in a judgment that such evidence is not highly probative, and that it is unseemly for courts to invade unnecessarily this very personal sphere of the witness' life." Saltzburg & Redden, Federal Rules of Evidence Manual 560 (4th ed.1986).

■■■ We hold that the military judge's legal basis for admitting evidence that Mrs. D was mailing religious articles to her mother was erroneous. To allow evidence of Mrs. D's religious beliefs to bolster her testimony, by showing that she would be unlikely to engage in an adulterous relationship because it would violate her religious beliefs, would violate Military Rule of Evidence 610. However, the evidence actually adduced did not pertain to Mrs. D's religious beliefs; it only established that she mailed religious articles to her mother. While such evidence was of

marginal relevance, it did not violate Military Rule of Evidence 610.

■ Turning to the evidence of the appellant's religious beliefs, the questions from the court members, pertaining to the appellant's Bible reading and attendance at church, should not have been asked by the military judge. While it would have been permissible to introduce opinion or reputation testimony to show that the appellant would be unlikely to engage in the conduct charged, evidence that the appellant was a church-going, Bible reading Baptist was not relevant and should not have been admitted. *Government of the Virgin Islands v. Petersen,* 553 F.2d 324 (3rd Cir. 1977). However, the answers were favorable to the appellant. We hold that the military judge erred by permitting the evidence of the appellant's religious practices to come before the court, but we find no prejudice because the evidence was favorable to the appellant. Although the appellant has couched the military judge's ruling regarding evidence of religious beliefs in terms of the judge's impartiality, we find no bias against the appellant with respect to the military judge's misapplication of Military Rule of Evidence 610.

Lastly, the appellant contends that the military judge's instructions to the court members were biased. We have examined the instructions on findings, and except for the error noted above on the impersonation offense, we find no error and no bias against the appellant. The instructions on sentencing, particularly the instructions on the appellant's mendacity and the military judge's comments on the demeanor of Mrs. D as a witness, are more troublesome.

■ Regarding the appellant's mendacity as a witness, the military judge instructed as follows:

Consider that the accused—evidently, your findings indicate that the accused has been mendacious, in other words, that he's not been honest with the court. Now, you may not consider that to enhance the sentence. You must determine the sentence based on the offenses. However, you can consider his mendacity in terms of whether or not he has rehabilitative potential. And that, of course,

rises [sic] on the question of whether or not he should be discharged from the service. And also, of course, on the same question of mendacity, consider that he has every quality that we seek in an NCO, evidently, except one, and that's integrity when it comes to telling the truth about his own personal affairs. Of course, we demand integrity of noncommissioned officers and all those in the chain of command, because you as commanders and leaders have to rely upon their word in tight situations and you must be able to feel that you can rely on them, whether it involves misconduct of themselves or others, or whether it involves intelligence on the battlefield. Integrity is a necessary thing.

We hold that the foregoing instruction was erroneous in several particulars. First, the military judge erroneously failed to submit the question whether the appellant lied to the court members. *See United States v. Warren,* 13 M.J. 278, 285–86 (C.M.A.1982). Instead, the military judge told the court members that their findings indicated that the appellant had lied. Second, the military judge failed to submit to the court members the question whether the appellant's false testimony was willful and material. *Id.* Third, the military judge erroneously linked the lack of rehabilitative potential with imposition of a punitive discharge. *See United States v. Ohrt,* 28 M.J. 301, 304–06 (C.M.A.1989) (rehabilitative potential includes potential for return to civilian life; punitive discharge can be imposed solely as punishment, without regard to rehabilitative potential.) Fourth, the military judge improperly opined to the court members that the appellant lacks integrity, instead of leaving to them that determination. Finally, he reinforced the prejudicial effect of his improper comments about the appellant's integrity by lecturing the court members on the importance of integrity. The overall effect of the instruction was to usurp the sentencing function by instructing the court members that the appellant lacked an essential soldierly quality and therefore should be punitively discharged.

■ Concerning the demeanor of Mrs. D as a witness, the trial defense counsel argued as follows:

Well, gentlemen, you saw Mrs. [D] when she testified, her demeanor. A normal person who is assaulted and tried to—attempted rape or something like that, normally when they testify they can't keep it together. They lose their composure, they cry, they boo-hoo. Her demeanor was not such. Her demeanor was, "Let me defend my story." That's what her demeanor was. Not one tear, gentlemen. So far as the impact upon Mrs. [D], there really wasn't much impact at all, apparently.

The military judge commented on Mrs. D's demeanor as follows:

And I recall her demeanor on the witness stand somewhat differently than Captain Grant [the trial defense counsel], because she did have out a tissue, and there were tears, and there were other problems that she had that day, although she did demonstrate strength up there.

We find that the military judge improperly neutralized the defense argument by substituting his recollection of the witness' demeanor for counsel's, without allowing the court members to rely on their own recollection.

The military judge may assist the court members "by explaining and commenting upon the evidence, by drawing their attention to the part of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination" (citations omitted). *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). When a military judge chooses to comment on evidence, he may not assume the role of a witness. *Id.* at 470, 53 S.Ct. at 699. "The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Id.* (quoting *Starr v. United States*, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894)). In short, a military judge may not trespass on the functions and responsibilities of the court members. *See United States v. Cisneros*, 491 F.2d 1068, 1074 (5th Cir.1974).

A witness' demeanor is evidence. *Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir.1952). It is error for the military judge to comment on a witness's demeanor without making it clear to the court members that they are the sole judges of the facts and are not bound by his comments. *See United States v. Jacquillon*, 469 F.2d 380, 387 (5th Cir.1972), *cert. denied sub nom., Jacquillon v. United States*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973). In this case the military judge told the court members that the trial defense counsel's argument was factually incorrect. He substituted his own recollection of the evidence for counsel's, and failed to submit the question of Mrs. D's demeanor to the court members. We hold that the military judge erred.

We find that the erroneous sentencing instructions in this case raise a reasonable likelihood of prejudice. We note that the maximum imposable period of confinement in this case was ten years and six months. The court imposed confinement for ten years. Although the trial defense counsel did not object or request additional instructions, we decline to apply waiver. Our review of the sentencing instructions as a whole convinces us that they constitute "plain error." *See generally United States v. Fisher*, 21 M.J. 327, 328–9 (C.M.A.1986) (plain error doctrine invoked to rectify errors seriously affecting fairness, integrity or public reputation of judicial proceedings, in which a miscarriage of justice would otherwise result.)

The Specification of Charge I is amended by deleting the words, "and by threatening to kill her." The findings of guilty of Charge I and its Specification as amended, and the findings of guilty of Charge II and III and their Specifications are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Judge JOHNSON and Judge HAGAN concur.