**UNITED STATES**

v.

**Master Sergeant Craig X. JORELL, United States Air Force**

**ACM 38061**

U.S. Air Force Court of Criminal Appeals

29 July 2013

Sentence adjudged 06 October 2011 by GCM convened at Andrews Air Force Base, Maryland.

**714**

Military Judge: Michael Coco.

Appellate Counsel for the Appellant: Major Scott W. Medlyn; Captain Shane A. McCammon; and Philip D. Cave (civilian counsel).

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before STONE, HARNEY, and SOYBEL, Appellate Military Judges

SOYBEL, Judge:

Contrary to his pleas, the appellant was convicted, by a court-martial composed of officer and enlisted members, of one specification of aggravated sexual contact with a child under the age of 12 years and one specification of assault consummated by a battery upon a child under the age 16 years, in violation of Article 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928. Consistent with his plea, he was found not guilty of a second specification under Article 128, UCMJ.

The appellant's offenses stem from events which occurred at his house when his young daughter, AJ, had two of her friends, ASW and ALT, sleep over for a slumber party. The appellant was convicted of sexually assaulting ASW and assaulting ALT.

### Military Rule of Evidence 610—Religious Beliefs or Opinions

The appellant raised two issues related to Mil. R. Evid. 610: (1) that the military judge erred in ruling that Mil. R. Evid. 610 applied to ASW and in not allowing the defense to question her about her Wiccan beliefs, such as having the ability turn people into frogs and other "fantastical" beliefs; and (2) that the defense counsel were ineffective for failing to obtain expert assistance about the Wicca religion to support their argument that Mil. R. Evid. 610 did not apply to ASW.

ASW testified that she practices Wicca. Anticipating she would testify that the appellant touched her inappropriately several times while slept, the defense indicated they wanted to cross-examine her on her religious beliefs. Their basic theory was that because her beliefs were so unrealistic, her testimony on the merits should not be believed. The military judge granted the Government's motion in limine citing Mil. R. Evid. 610 as a basis for disallowing that line of questioning.

During the motions hearing, ASW testified about some of her beliefs. She testified she believed that Wiccans, also called witches, could cast spells and make inanimate objects move, and that she had heard of witches having the power to kill other people. She said that even though she had never tried these types of spells, they were indeed part of her religious beliefs and her understanding of the Wiccan religion. ASW also testified she believed there were good witches (white witches) and bad witches (black witches).

The defense argued that the Sixth Amendment [1] gave the appellant a right to confront ASW about her asserted beliefs. Specifically, the defense argued that because ASW had never engaged in any Wiccan activities and only decided to become a Wiccan after watching a cartoon about it, it was "not an actual establish (sic) religion in that respect, in that [Mil. R. Evid.] 610 is not applicable." The defense also argued that some of ASW's asserted beliefs, such as Wiccans having the ability to case "spells" to physically change another person into a frog, were not part of the Wiccan religion. Accordingly, they argued that cross-examining her on those beliefs would not invoke Mil. R. Evid. 610, and it was error for the judge to apply it to prevent questioning her on these beliefs.

---

1. U.S. Const. amend. VI.

The defense also argued that ASW's stated beliefs, not being actual Wiccan beliefs, showed that she was detached from reality or delusional and accordingly, her testimony about the appellant's actions would not be credible. While claiming these beliefs were not part of the Wiccan religion, the defense never questioned the sincerity of ASW's beliefs; rather they focused on whether her stated beliefs were actually part of the Wiccan religion.

■ We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. White,* 69 M.J. 236, 239 (C.A.A.F.2010); *United States v. Alameda,* 57 M.J. 190 (C.A.A.F. 2002); *United States v. Sullivan,* 42 M.J. 360, 363 (C.A.A.F.1995). An abuse of discretion occurs when the findings of fact are clearly erroneous or the conclusions of law are based on an erroneous view of the law. *United States v. Hollis,* 57 M.J. 74, 79 (C.A.A.F.2002). The abuse of discretion standard is a "strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *White,* 69 M.J. at 239.

■ The military judge granted the prosecution's motion in limine and did not allow the defense to question ASW about the religion of "Wicca and anything related to it." In doing so, he also found that the evidence was not relevant under Mil. R. Evid. 401 as to ASW's ability to perceive, and he performed the Mil. R. Evid. 403 balancing test and found the probative value of the evidence was outweighed by the danger of confusion of the issues or misleading the members. We find his ruling was not an abuse of discretion and therefore, the appellant's right to confront the witness was not violated.

Mil. R. Evid. 610 reads: "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the credibility of the witness is impaired or enhanced." This language is very similar to the federal rule of the same number and they obviously protect the same interest.[2] "The Federal rule closely resembles a privilege, and is 'probably grounded in a judgment that such evidence is not highly probative, and that it is unseemly for courts to invade unnecessarily this very personal sphere of the witness' life.'" *United States v. Felton,* 31 M.J. 526 (A.C.M.R.1990) (citing SALTZBURG & REDDEN, FEDERAL RULES OF EVIDENCE MANUAL 560 (4th ed. 1986)).[3]

As courts in the Federal system have articulated, the rule prevents the witness's religion from being used to fuel predispositions that might cast the witness in a positive or negative light. "The purpose of [this rule] 'is to guard against the prejudice which may result from disclosure of a witness' faith.'" *Davis v. Jones,* 2007 WL 2873041 (W.D.Mich. 2007) (citing *United States v. Sampol,* 636 F.2d 621, 666 (C.A.D.C.1980); *Pham v. Beaver,* 445 F.Supp.2d 252, 259 (W.D.N.Y.2006) ("it is highly improper for the prosecutor to attempt to bolster a witness's credibility on the basis that he subscribes to a particular religion, or to suggest that a witness is more credible simply because he is religious"); *People v. Jones,* 82 Mich.App. 510, 516, 267 N.W.2d 433 (1978) ("[t]he purpose of the statute is to strictly avoid any possibility that jurors will be prejudiced against a certain witness because of personal disagreement with the religious views of that witness")).

Here, the military judge found that ASW was a follower of Wicca, a recognized religion, and while some of her beliefs may not be "mainstream," her beliefs did not show she was "delusional." He also recognized that the defense wanted to show that ASW's beliefs were evidence that she was "removed from reality and cannot perceive events normally as they take place." Based on his observations, the judge found that not to be the case. The judge determined that the beliefs espoused by the witness were not a

---

2. Federal Rule of Evidence 610 reads: "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."

3. Although the Rule was amended in 2011, the advisory committee noted that any change was stylistic only and there was "no intent to change any result on evidence admissibility." FED. R.EVID. 610 advisory committee's notes.

product of her imagination and that, while some of them may be disputed internally within the Wiccan community, they were certainly prevalent within the community.[4] He also noted that there was no psychiatric or any other evidence that would cause the court the question the witness's sanity or connection to reality.

It was obvious that the defense was trying to introduce evidence of AWS's beliefs for the very reason Mil. R. Evid. 610 prevents it. Their fundamental argument is that ASW's beliefs are so strange, so ridiculous, that they are evidence of her being out of touch with reality and unworthy of belief. The defense was attempting to use the witness's faith or religious beliefs to create a prejudice against her so she would not be believed when she testified as to what the appellant had done to her. This is not allowed under Mil. R. Evid. 610.

We also reject the appellant's contention that ASW's beliefs are not part of the Wiccan religion and thus fall outside of the protection of Mil. R. Evid. 610. How she originally learned of the religion is irrelevant. Her initial contact only stirred her nascent interest in the practice. It makes no difference whether it was a cartoon or a factual documentary. ASW testified that once having been introduced to it on television, she used the internet and printed material to gain the knowledge she possessed at the time of trial. Mil. R. Evid. 610 and relevant case law recognize the very personal nature of one's religious beliefs. It is common for members of the same religion to vary in their beliefs and still claim to be adherents to the same faith. Here, the appellant wishes to challenge the orthodoxy of ASW's beliefs. Courts should not be in the business of deciding what is or is not a proper belief under one's professed religion. We view as one purpose of Mil. R. Evid. 610 the avoidance of a court having to make value judgments between religions or of one's religious beliefs compared to others

in the same faith. We decline the appellant's invitation to make courts-martial ecclesiastical courts of general jurisdiction. The witness believes what she believes and testified that was her religion. The appellant never challenged the sincerity of those beliefs nor did he provide the court an alternative permissible reason under Mil. R. Evid. 610 to admit evidence of those beliefs.

Finally, at the heart of the appellant's argument is that the appellant should be allowed to show the jury that ASW's beliefs are so farfetched and fantastical that she is unworthy of belief. In his trial brief, the appellant described her as living, in part, in a world of fantasy. Certainly there are many religious beliefs that could be subject to the same arguments as those made by the appellant; some of them are the most deeply held and foundational religious convictions in the world.[5] This form of attack is what Mil. R. Evid. 610 does not allow. Given this, the appellant's other claim that trial defense counsel was ineffective for not requesting an expert witness to support their argument that Mil. R. Evid. 610 did not apply to ASW's assertions regarding her religious beliefs is misplaced. That type of expert evidence would not be allowed under Mil. R. Evid. 610 based on the above discussion. *See also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Datavs,* 71 M.J. 420 (C.A.A.F.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 1847, 185 L.Ed.2d 817 (2013) (mem.).

While evidence of one's religion is admissible for other reasons, such as when they are probative of some other issue in a trial such as to show bias or interest, they are not admissible for the reasons proffered by the appellant. *See United States v. Brown,* 41 M.J. 1 (C.M.A.1994); *United States v. Thomas,* 40 M.J. 252 (C.M.A.1994) (an individual's religious beliefs cannot be used to attack or buttress the credibility of a witness). *See*

---

4. Evidence about the religion was submitted as appellate exhibits upon which the judge relied for some of his findings.

5. *See, e.g.,* Genesis 19:26 (woman turned into a pillar of salt); Exodus 7:10 (staff turned into a serpent); Exodus 7:14–25 (water turned into blood); John 2:1 –2:11 (water turned into wine);

Genesis 3:1 (a talking snake); Numbers 22:21–35 (a talking donkey); 1 Kings 17:17–24 (A widow's son raised from the dead); 2 Kings 6:5–7 (iron axe-head made to float); Matt 14:25 (Jesus walked on water); Mark 6:48 (same); John 6:15 (same); John 9:1–7 (man born blind cured).

*also United States v. Beasley,* 72 F.3d 1518 (11th Cir.1996); *United States v. Sun Myung Moon,* 718 F.2d 1210, 1233 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *United States v. Reme,* 738 F.2d 1156, 1159–60 (11th Cir.1984), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985); *United States v. Mills,* 704 F.2d 1553 (11th Cir.1983), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); *Cf. Tucker v. Reil,* 51 Ariz. 357, 77 P.2d 203 (1938). Because the appellant was attempting to introduce evidence of ASW's religious beliefs in order the attack her credibility as a witness—a purpose specifically excluded by Mil. R. Evid. 610—the military judge did not abuse his discretion in granting the Government's motion to exclude that evidence.

### Factual Sufficiency of the Evidence

The appellant contends that the evidence was factually insufficient to prove that he touched ASW's groin area and assaulted ALT by sitting on her.[6]

▌ Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of factual sufficiency de novo. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F.2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner,* 25 M.J. at 325. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea,* 46 C.M.R. 223, 224–25 (C.M.A.1973).

▌ The evidence factually supports the finding of the appellant's guilt of an aggravated sexual contact by touching ASW's groin area. ASW testified that she fell asleep early in the evening on a futon in the den. She was left alone to sleep there when her two friends when upstairs to sleep.

ASW awoke several times during the night with the appellant's hand rubbing her crotch. She was able to make him temporarily stop by turning over and changing positions as if she was starting to wake up. While there was a discrepancy in the testimony of ASW as to whether the appellant's hand was outside or inside of her clothing, ASW never wavered in her testimony that the appellant was touching her in her "private area." Even though DNA tests were somewhat inconclusive as to whose DNA was inside ASW's underwear and her blue jeans, a male's DNA, consistent with but not conclusively proving it was from the appellant, was found in those locations. The expert testimony discounted as improbable the defense's theory that improper collection of the clothing ASW was wearing could have caused DNA being in those locations. ASW also noticed that her blue jeans were unbuttoned and unzipped when she awoke. They were fastened when she fell asleep. When ASW returned home early the next morning after having made up the excuse that she missed her parents, she immediately started crying and told her mother that the appellant was a "creep" and that he had touched her. These facts are legally and factually sufficient to support the appellant's conviction under Article 120, UCMJ, for engaging in sexual contact with ASW by touching her groin area.

▌ We likewise find the evidence factually sufficient to support the finding of the appellant's guilt of assault consummated by a battery against ALT by sitting on her. Sometime after ASW fell asleep downstairs on the futon, ALT and AJ when upstairs to AJ's bedroom and fell asleep in the bed. ALT testified that she awoke two times to find the appellant staring at her while she was asleep. In the morning after ASW left, the appellant got into bed with the two girls and began crowding ALT which made her move away from him and closer to AJ. He then began "horsing around" by sitting on (straddling) ALT and taking her stuffed animal and keeping it from her. He straddled ALT several times but did not sit on his

---

6. Though not raised, we also find the evidence legally sufficient to support the appellant's convictions. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S.

307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *quoted in United States v. Humpherys,* 57 M.J. 83, 94 (C.A.A.F.2002).

daughter, AJ. At some point, the appellant told ALT she was cute. During this activity ALT told the appellant to "stop," but he would eventually start up the same activity again. This wrestling activity continued after the two girls went back downstairs to the game room. Later, ALT told AJ that her father made her feel uncomfortable. The appellant sat on ALT and prevented her from moving while he was trying to take away her stuffed animal. Though he initially complied with her demand that he get off of her, he reinitiated the same behavior approximately five more times after that. Each time ALT told him to get off of her—a clear demonstration of her lack of consent to the appellant's actions. Certainly there was evidence of the use of unlawful force or violence and the infliction of bodily harm without legal justification. *See United States v. Bonner,* 70 M.J. 1 (C.A.A.F.2011); *United States v. Johnson,* 54 M.J. 67 (C.A.A.F.2000); *United States v. Bell,* 72 M.J. 543 (Army Ct.Crim. App.2013). *See also* Article 128(b) and (c)(2)(a); *Manual for Courts–Martial, United States (MCM ),* Part IV, ¶ 54.b.(3)(c) (2008 ed.). *See also MCM,* ¶ 54(c)(1)(a) ("Bodily harm means any offensive touching of another, however slight."). The force used can be minimal. Indeed, as the *MCM* points out, spitting on someone is enough force to constitute a battery. *Id.* After applying the applicable standards, we are convinced that the evidence is factually sufficient to support the appellant's conviction under Article 128, UCMJ, for an assault and battery upon ALT by sitting on her body.

### Mistrial

The appellant argues the military judge should have granted a mistrial because the prosecutor improperly stated during argument that "we have a duty to protect society," thereby aligning the Government with the members and preventing any individualizing of the sentence towards the appellant. The appellant also claims the prosecutor erred by implying there were two child molestation victims when he was convicted of "molesting" only one. Finally, he argues the prosecutor gave his personal opinion and "impliedly commented on the [a]ppellant's right to a trial."

"[A] mistrial is a drastic remedy [that] is reserved for only those situations where the military judge must intervene to prevent a miscarriage of justice." *United States v. Garces,* 32 M.J. 345, 349 (C.M.A. 1991). "Because of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action." *United States v. Ashby,* 68 M.J. 108, 122 (C.A.A.F.2009), *as quoted in United States v. Vazquez,* 72 M.J. 13, 19 n. 5 (C.A.A.F.2013). A military judge has discretion to "declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." Rule for Courts–Martial (R.C.M.) 915(a). "We will not reverse a military judge's determination on a mistrial absent clear evidence of an abuse of discretion." *United States v. Coleman,* 72 M.J. 184 (C.A.A.F.2013) (citing *Ashby,* 68 M.J. at 122).

We find no merit to the appellant's argument. While the trial counsel may have said the appellant "molests little girls and assaults them," it was clearly a slip of the tongue to which the appellant objected. Besides, the trial counsel continued and accurately described the facts of the case. We have no doubt that the members, having rendered the verdict in the case, knew exactly of which offenses the appellant was just convicted.

Concerning the "duty to protect society" comment, there was no objection to it by the defense, which normally constitutes waiver of the issue. In any event, military law generally recognizes five principles for court-martial sentences with the protection of society being one of them. *See United States v. McDonald,* 55 M.J. 173 (C.A.A.F. 2001); Department of the Army Pamphlet 27–9, *Military Judges' Benchbook,* ¶ 2–5–21 (1 January 2010); R.C.M. 1001(g). Thus, there was no error. When the prosecutor started arguing that he could not think of too many more crimes as repulsive as sexual abuse, the defense objected and the military judge sustained the objection as insertion of a personal opinion. Finally, when the prosecutor commented that the appellant did not

apologize for his actions, the defense asked for a mistrial based on the Government's comment on the appellant's right to remain silent. The military judge instructed the members to disregard any statement that implied the accused exercised his right to remain silent when the he failed to apologize. The members all agreed to follow the judge's instruction. "Juries are presumed to follow instructions, until demonstrated otherwise." *Washington*, 57 M.J. at 403. There is absolutely no reason to believe that they did not follow the instructions in this case.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.