# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Master Sergeant CRAIG X. JORELL
### United States Air Force

## ACM 38061 (recon)

## 27 August 2014

## ____ M.J. ____

Sentence adjudged 6 October 2011 by GCM convened at Andrews Air Force Base, Maryland. Military Judge: Michael J. Coco.

Approved Sentence: Bad-conduct discharge, confinement for 3 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Shane A. McCammon; Major Scott W. Medlyn; Captain Thomas A. Smith; and Philip D. Cave, Esquire.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Major Brian C. Mason; Major Daniel J. Breen, and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final publication.

PER CURIAM:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of one specification of aggravated sexual

contact with a child under the age of 12 years and one specification of assault consummated by a battery upon a child under the age of 16 years, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928. Consistent with his pleas, he was found not guilty of a second specification under Article 128, UCMJ. The court adjudged a bad-conduct discharge, confinement for 3 years, and reduction to E-1. The convening authority approved the sentence as adjudged.

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning (25 June 2013).

The appellant originally raised on appeal: (1) two issues related to Mil. R. Evid. 610; (2) a claim that the evidence was factually insufficient; and (3) a claim that the military judge should have granted a mistrial due to improper argument by trial counsel.

On 29 July 2013, we issued a decision affirming the approved findings and sentence in the appellant's case. *United States v. Jorell*, 72 M.J. 712 (A.F. Ct. Crim. App. 2013). Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of that panel. The appellant petitioned our superior court for review of his case and filed a motion to vacate with our Court. On 31 October 2013, our superior court dismissed that petition for review without prejudice. *United States v. Jorell*, 73 M.J. 92, (C.A.A.F. 2013) (mem.). On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted reconsideration in the appellant's case on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant submitted a supplemental assignment of errors asserting he is entitled to relief due to excessive post-trial processing delays. With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinion issued by this Court. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

The appellant's offenses stem from events which occurred at his house when his young daughter, AJ, had two of her friends, ASW and ALT, over for a slumber party. The appellant was convicted of sexually assaulting ASW and assaulting ALT.

The appellant raised two issues related to Mil. R. Evid. 610: (1) that the military judge erred in ruling that Mil. R. Evid. 610 applied to ASW and in not allowing the defense to question her about her Wiccan beliefs, such as having the ability turn people into frogs and other "fantastical" beliefs; and (2) that trial defense counsel were ineffective for failing to obtain expert assistance about the Wicca religion to support their argument that Mil. R. Evid. 610 did not apply to ASW.

ASW testified that she practices Wicca. Anticipating she would testify that the appellant touched her inappropriately several times while she slept, trial defense counsel sought to cross-examine her on her religious beliefs. Their basic theory was that because her beliefs were so unrealistic, her testimony on the merits should not be believed. The military judge granted the Government's motion in limine, citing Mil. R. Evid. 610 as a basis for disallowing this line of questioning.

During the motions hearing, ASW testified about some of her beliefs. She testified she believed that Wiccans, also called witches, could cast spells and make inanimate objects move, and that she had heard of witches having the power to kill other people. She said that even though she had never tried these types of spells, they were indeed part of her religious beliefs and her understanding of the Wiccan religion. ASW also testified she believed there were good witches and bad witches.

The defense argued that the Sixth Amendment[1] gave the appellant a right to confront ASW about her beliefs. Specifically, trial defense counsel argued that because ASW had never engaged in any Wiccan activities and only decided to become a Wiccan after watching a cartoon about it, it was "not an actual establish[ed] religion [and] in that respect . . . [Mil. R. Evid.] 610 is not applicable." The defense also argued that some of ASW's asserted beliefs, such as Wiccan ability to cast spells to physically change another person into a frog, were not part of the Wiccan religion. Accordingly, they argued that cross-examining her on those beliefs would not invoke Mil. R. Evid. 610, and it was error for the military judge to apply it to prevent questioning her on these beliefs.

The defense further argued that ASW's stated beliefs, not being actual Wiccan beliefs, showed she was detached from reality or delusional and accordingly, her testimony about the appellant's actions would not be credible. While claiming these beliefs were not part of the Wiccan religion, the defense never questioned the sincerity of

---

[1] U.S. CONST. amend. VI.

ASW's beliefs; rather they focused on whether her stated beliefs were actually part of the Wiccan religion.

We review "a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010). An abuse of discretion occurs when the findings of fact are clearly erroneous or the conclusions of law are based on an erroneous view of the law. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

The military judge granted the prosecution's motion in limine and did not allow the defense to question ASW about the religion of "Wicca and anything related to it." In doing so, he also found that the evidence was not relevant under Mil. R. Evid. 401 as to ASW's ability to perceive, and he performed the Mil. R. Evid. 403 balancing test and found that any probative value of the evidence was substantially outweighed by the danger of confusion of the issues or misleading the members. We find his ruling was not an abuse of discretion, and therefore, the appellant's right to confront the witness was not violated.

Mil. R. Evid. 610 reads: "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the credibility of the witness is impaired or enhanced." This language is similar to the federal rule of the same number and they obviously protect the same interest.[2] "The federal rule closely resembles a privilege, and is 'probably grounded in a judgment that such evidence is not highly probative, and that it is unseemly for courts to invade unnecessarily this very personal sphere of the witness' life.'" *United States v. Felton*, 31 M.J. 526, 532 (A.C.M.R. 1990) (quoting Saltzburg & Redden, *Federal Rules of Evidence Manual* 560 (4th ed. 1986)).[3]

As courts in the federal system have articulated, the rule prevents the witness's religion from being used to fuel predispositions that might cast the witness in a positive or negative light:

The purpose of [this rule] "is to guard against the prejudice which may result from disclosure of a witness's faith." *United States v. Sampol*,

---

[2] Federal Rule of Evidence 610 reads: "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."

[3] Although the federal rule was amended in 2011, the advisory committee noted that any change was stylistic only and there was "no intent to change any result in any ruling on evidence admissibility." Advisory Committee's Notes on FED. R. EVID. 610 (2011).

636 F.2d 621, 666 (C.A.D.C. 1980). *See, e.g., Pham v. Beaver*, 445 F. Supp.2d 252, 259 (W.D.N.Y. 2006) ("it is highly improper for the prosecutor to attempt to bolster a witness's credibility on the basis that he subscribes to a particular religion, or to suggest that a witness is more credible simply because he is religious"); *People v. Jones*, 82 Mich. App. 510, 516, 267 N.W.2d 433 (1978) ("[t]he purpose of the statute is to strictly avoid any possibility that jurors will be prejudiced against a certain witness because of personal disagreement with the religious views of that witness").

*Davis v. Jones*, No. 1:04-cv-294, 2007 WL 2873041, at 10 (W.D. Mich. September 26, 2007).

Here, the military judge found that ASW was a follower of Wicca, a recognized religion, and while some of her beliefs may not be "mainstream," her beliefs did not show she was "delusional." He also recognized that the defense wanted to show that ASW's beliefs were evidence that she was "removed from reality and cannot perceive events normally as they take place." Based on his observations, the military judge found that not to be the case. The military judge determined that the beliefs espoused by the witness were not a product of her imagination and that, while some of them may be disputed internally within the Wiccan community, they were certainly prevalent within the community.[4] He also noted that there was no psychiatric or any other evidence that would cause the court to question the witness's sanity or connection to reality.

It was obvious that the defense was trying to introduce evidence of ASW's beliefs for the very reason Mil. R. Evid. 610 prevents it. Their fundamental argument was that ASW's beliefs were so ridiculous that they were evidence of her being out of touch with reality and unworthy of belief. The defense was attempting to use the witness's faith or religious beliefs to create a prejudice against her so she would not be believed when she testified as to what the appellant had done to her. This is precisely the sort of evidence not allowed under Mil. R. Evid. 610.

The appellant's contention that ASW's beliefs are not part of the Wiccan religion and thus fall outside of the protection of Mil. R. Evid. 610 does not alter our position. Regardless of whether ASW's beliefs differed from "mainstream" Wiccan beliefs in certain areas, the military judge found that ASW's beliefs were sincerely-held religious beliefs. That finding is not clearly erroneous. Mil. R. Evid. 610 and relevant case law recognize the very personal nature of one's religious beliefs. It is common for members of the same religion to vary in their beliefs and still claim to be adherents to the same faith. Courts should not be in the business of deciding what is or is not a proper belief

---

[4] Evidence about the religion was submitted as appellate exhibits upon which the military judge relied for some of his findings.

under one's professed religion, so long as those beliefs are in fact religious. We view as one purpose of Mil. R. Evid. 610 the avoidance of courts making value judgments between religions or of one's religious beliefs compared to others in the same faith. We decline the appellant's invitation to make courts-martial ecclesiastical courts of general jurisdiction. The witness believed what she believed and testified that those beliefs were part of her religion. The appellant never challenged the sincerity of those beliefs nor did he provide the court an alternative permissible reason under Mil. R. Evid. 610 to admit evidence of those beliefs.

Finally, the heart of the appellant's argument is that he should have been allowed to show the jury that ASW's beliefs were so fantastical that she was unworthy of belief. In his trial brief, the appellant described her as living, in part, in a world of fantasy. Certainly there are many religious beliefs that could be subject to the same arguments as those made by the appellant; some of them are the most deeply held and foundational religious convictions in the world. This form of attack is what Mil. R. Evid. 610 does not allow. Given this, the appellant's other claim that trial defense counsel was ineffective for not requesting an expert witness to support their argument that Mil. R. Evid. 610 did not apply to ASW's assertions regarding her religious beliefs is misplaced. That type of expert evidence would not be allowed under Mil. R. Evid. 610 based on the above discussion. *See also Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Datavs*, 71 M.J. 420 (C.A.A.F. 2012), *cert. denied* 133 S. Ct. 1847 (2013) (mem.).

We also concur with the military judge's ruling that the evidence was not relevant under Mil. R. Evid. 401, and that if it had minimal probative value, that value was substantially outweighed by the danger of confusion of the issues or misleading the members. The defense did not tie ASW's beliefs to her ability to perceive or recall the events at issue, nor did ASW's beliefs impact her motivation or ability to truthfully testify. In short, even if ASW's beliefs were held to be farfetched in this one area of her life, there was no showing that these beliefs translated to her testimony about the events in question.

*Factual Sufficiency of the Evidence*

The appellant contends that the evidence was factually insufficient to prove he touched ASW's groin area and assaulted ALT by sitting on her.

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). "[I]n resolving

questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The evidence supports the finding of the appellant's guilt of aggravated sexual contact by touching ASW's groin area. ASW testified that she fell asleep early in the evening on a futon in the den. She was left alone to sleep there when her two friends went upstairs to sleep. ASW awoke several times during the night with the appellant's hand rubbing her crotch. She was able to make him temporarily stop by turning over and changing positions as if she were starting to wake up. While there was a discrepancy in the testimony of ASW as to whether the appellant's hand was outside or inside of her clothing, ASW never wavered in her testimony that the appellant was touching her in her "private area." Even though DNA tests were somewhat inconclusive as to whose DNA was inside ASW's underwear and blue jeans, a male's DNA—consistent with the appellant's but not conclusively proving it was from him—was found in those locations. The expert testimony discounted the defense's theory that improper collection of the clothing ASW was wearing could have caused DNA to be in those locations. ASW also noticed that her blue jeans were unbuttoned and unzipped when she awoke, even though they were fastened when she fell asleep. When ASW returned home early the next morning after having made up the excuse that she missed her parents, she immediately started crying and told her mother that the appellant was a "creep" and that he had touched her. These facts are factually sufficient to support the appellant's conviction under Article 120, UCMJ, for engaging in sexual contact with ASW by touching her groin area.

We likewise find the evidence factually sufficient to support the finding of the appellant's guilt of assault consummated by a battery against ALT by sitting on her. Sometime after ASW fell asleep downstairs on the futon, ALT and AJ went upstairs to AJ's bedroom and fell asleep in the bed. ALT testified that she awoke two times to find the appellant staring at her while she was asleep. In the morning after ASW left, the appellant got into bed with the two girls and began crowding ALT which made her move away from him and closer to AJ. He then began "horsing around" by sitting on and straddling ALT and taking her stuffed animal and keeping it from her. He straddled ALT several times but did not sit on his daughter, AJ. At some point, the appellant told ALT she was cute. During this activity ALT told the appellant to "stop," but he would eventually start up the same activity again. This wrestling activity continued after the two girls went back downstairs to the game room. Later, ALT told AJ that her father made her feel uncomfortable. The appellant sat on ALT and prevented her from moving while he was trying to take away her stuffed animal. Though he initially complied with her demand that he get off of her, he reinitiated the same behavior approximately five more times after that. Each time ALT told him to get off of her – a clear demonstration of her lack of consent to the appellant's actions. Certainly there was evidence of the use of unlawful force or violence and the infliction of bodily harm without legal justification.

*See United States v. Bonner*, 70 M.J. 1 (C.A.A.F. 2011); *United States v. Johnson*, 54 M.J. 67 (C.A.A.F. 2000); *United States v. Bell*, 72 M.J. 543 (Army Ct. Crim. App. 2013). *See also* Article 128(b) and (c)( 2)(a), UCMJ; *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 54.b.(3)(c) (2008 ed.); *MCM*, ¶ 54.c.(1)(a) ("'Bodily harm' means any offensive touching of another, however slight."). The force used can be minimal. Indeed, as the *Manual* points out, spitting on someone is enough force to constitute a battery. *MCM*, ¶ 54.c.(2)(c). After applying the applicable standards, we are convinced that the evidence is factually sufficient to support the appellant's conviction under Article 128, UCMJ, for an assault consummated by a battery upon ALT by sitting on her body. [5]

*Mistrial*

The appellant argues the military judge should have granted a mistrial because trial counsel improperly stated during argument that "we have a duty to protect society," thereby aligning the Government with the members and preventing any individualizing of the sentence toward the appellant. The appellant also claims trial counsel erred by implying there were two child molestation victims when he was convicted of "molesting" only one. Finally, he argues trial counsel gave his personal opinion and "impliedly commented on the [a]ppellant's right to a trial."

"[A] mistrial is a drastic remedy [that] is reserved for only those situations where the military judge must intervene to prevent a miscarriage of justice." *United States v. Garces*, 32 M.J. 345, 349 (C.M.A. 1991). "Because of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action." *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009), *quoted in United States v. Vazquez*, 72 M.J. 13, 19 n.5 (C.A.A.F. 2013). A military judge has discretion to "declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." Rule for Courts-Martial (R.C.M.) 915(a). "'We will not reverse a military judge's determination on a mistrial absent clear evidence of an abuse of discretion.'" *United States v. Coleman*, 72 M.J. 184, 186 (C.A.A.F. 2013) (quoting *Ashby*, 68 M.J. at 122).

We find no merit to the appellant's argument. While trial counsel may have said the appellant "molests little girls and he assaults them," it was clearly inadvertent to describe these incidents occurring in the plural. Trial defense counsel promptly objected, but was overruled as the military judge found trial counsel referenced "assault" as well as the molestation. Apart from this comment, trial counsel accurately described the facts of

---

[5] Although not raised, we also analyze the evidence for legal sufficiency in accordance with *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), *quoted in United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002), and conclude the evidence was legally sufficient to support the appellant's convictions.

the case. We have no doubt that the members, having rendered the verdict in the case, knew exactly of which offenses the appellant was just convicted.

Concerning the "duty to protect society" comment, there was no objection to it by trial defense counsel, which normally constitutes waiver of the issue. In any event, military law generally recognizes five principles for court-martial sentences with the protection of society being one of them. *See United States v. McDonald*, 55 M.J. 173, 175 (C.A.A.F. 2001); Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 2–5–21 (1 January 2010); R.C.M. 1001(g). Thus, there was no error. When trial counsel stated he could not think of many crimes as repulsive as sexual abuse, trial defense counsel objected and the military judge sustained the objection as insertion of a personal opinion. Finally, when trial counsel commented that the appellant did not apologize for his actions, trial defense counsel asked for a mistrial based on the Government's comment on the appellant's right to remain silent. The military judge instructed the members to disregard any statement that implied the accused exercised his right to remain silent when the he failed to apologize. The members all agreed to follow the military judge's instruction. "Juries are presumed to follow instructions, until demonstrated otherwise." *Washington*, 57 M.J. at 403. There is absolutely no reason to believe that they did not follow the instructions in this case, and the military judge did not abuse his discretion by declining to impose the drastic remedy of a mistrial.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was originally docketed for appellate review on 28 December 2011, and this Court rendered its initial decision on 29 July 2013. This exceeded the 18-month standard established in *Moreno* and is therefore facially unreasonable. We have examined the factors identified in *Barker v. Wingo*, 407 U.S. 514 (1972) to determine whether the appellant suffered from a due process violation as a result of the delay. We

find that no such due process violation occurred in the delay leading up to this Court's 29 July 2013 decision. In particular, the appellant has made no showing of prejudice under the fourth *Barker* factor. When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

As for the time that has elapsed since this Court's 29 July 2013 decision, we find no due process violation. The *Moreno* standards continue to apply as a case continues through the appellate process. *Mackie*, 72 M.J. at 135–36. The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id*. at 136; *see also Roach*, 69 M.J. at 22. The time between our superior court's action to return the record of trial to our Court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136. Furthermore, the reason for the delay between 29 July 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[6] to appoint civilian employees to the service courts of criminal appeals.

Lastly, even assuming the total appellate processing of this case raises a presumption of unreasonable delay, we again conclude the delay was harmless under the *Barker* and *Toohey* analyses.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the

---

[6] U.S. CONST. art II § 2, cl 2.

post-trial processing in any stage of the appellate review of this matter.  We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant occurred.[7]  Articles 59(a) and  66(c).  Accordingly, the approved findings and sentence are

AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[7] We note that the members experienced some difficulty announcing their findings in proper form.  The panel president had to announce the findings four times before the military judge accepted them.  Even on the fourth attempt, the president announced that the appellant was found guilty of Specification 1 of Charge II except the words "change date from 5 March to 6 March."  The proper way to announce this finding would have been to except the words "5 March 2011" and substitute therefor the words "6 March 2011."  However, we find no prejudicial error in this matter.  The members' intent was sufficiently clear, and the findings worksheet confirms the members' intent to substitute "6 March 2011" for "5 March 2011" in Specification 1 of Charge II.