UNITED STATES

v.

**Airman First Class Bret C. CAGLE, FR 569–51–6071 United States Air Force.**

**ACM 23181.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 13 March 1981.

Decided 23 Nov. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Douglas H. Kohrt.

Appellate Counsel for the United States: Colonel James P. Porter and Major George D. Cato.

Before HODGSON, POWELL and MILLER, APPELLATE MILITARY JUDGES.

## DECISION

HODGSON, Chief Judge:

Contrary to his pleas, the accused was convicted of robbery, unlawfully carrying a concealed weapon, and wrongfully impersonating a special agent of the Air Force Office of Special Investigations in violation of Articles 122 and 134, Uniform Code of Justice, 10 U.S.C. §§ 922, 934. The approved sentence extends to a bad conduct discharge, three years confinement at hard labor, forfeiture of all pay and allowances and reduction to airman basic.

### I

At trial, a bizarre set of facts unfolded. The accused and Airman Robinson, the victim of the robbery offenses, became acquainted in early August, 1980. A Svengali-like relationship quickly developed with the accused playing the dominant role. He shortly revealed to Airman Robinson that his true identity was "Calvin Frye" and he was a captain doing undercover work for the Office of Special Investigations (OSI); should the accused's "undercover status" become known, Airman Robinson would be held responsible and dealt with accordingly. The accused professed a knowledge of black magic and claimed that his mission was to destroy foreign agents and others who were plotting treason. He also claimed to be an expert in karate, and would occasionally demonstrate his skill by inflicting bruises on Airman Robinson.

In early October 1980, the accused's actions toward Airman Robinson became more hostile. On 4 October, he pointed a loaded .22 rifle with the safety off at Airman Robinson, saying "if this were a .357 Magnum I could blow you in half." A few moments later he again pointed the rifle at Airman Robinson announcing, "from over a thousand yards away I could kill you with this gun, that's how good a shot I am." The accused indicated he had shot some foreign agents and left them in the woods to be disposed of later. He also indicated he was a "hit man" for the OSI. At times the accused and Airman Robinson would drive around the base area looking for foreign agents. Twice the accused stopped the car and fired 14 rounds into the woods from a .22 rifle; a third time he fired a single shot from a .30–30 rifle he also had in the car. Later, the accused attempted to compel Airman Robinson to show the "proper respect" by threatening to drive a car they occupied over a railroad grade crossing at a speed of more than 100 miles per hour. Airman Robinson was able to convince the accused not to do this.

The following night the accused visited Airman Robinson at work and, after expressing displeasure over the crossing incident, indicated "he could kill" him or cause him great pain unless Robinson gave him something of value. The accused stated he would permit Airman Robinson to buy "his way out of [the] mess [he] was in." Airman Robinson offered the accused a stereo set which he accepted as payment. The accused pocketed Airman Robinson's room key and later removed the stereo set. He subsequently pawned the AM–FM receiver, sold the cassette deck to Airman Gianettino for $50.00, and kept the speakers. Airman Robinson let the accused take the stereo set because he was afraid of him and feared he might do something irrational.

During November 1980, the accused continued his portrayal of an OSI agent; he conducted interviews using an OSI business card which he had obtained from the real Calvin Frye. He generally held himself out as a member of the OSI.

On 2 November 1980, the accused "questioned" the daughter of a retired Air Force member as to her alleged drug activities, and in the process reduced her to tears.

Later that same night while the accused was driving Airman Robinson's car he became upset because Airman Robinson was dating the girl the accused had just questioned. He accused Airman Robinson of "behaving very badly," drew a knife from a pants leg, and then held it at Airman Robinson's neck. At this point Airman Robinson offered to "buy his way out" by giving the accused his 1980 Camaro; this was satisfactory to the accused. He took the car keys and drove back to the barracks. The next day Airman Robinson transferred the car title to the accused.

Appellate defense counsel have assigned five errors and have invited our attention to six assignments of error urged in the accused's request for appellate representation. Only three assertions merit discussion.

They contend since the stereo equipment (Specification 1 of Charge I) was not taken from the presence of Airman Robinson, the facts will not support a robbery conviction. They further urge that the military judge erred by not instructing, *sua sponte*, on the lesser included offense of assault with a dangerous weapon as it related to the robbery of the automobile.

■ We agree that a robbery conviction as to either specification cannot be sustained. One of the essential elements of a robbery offense is that the taking be either from the person or *in the presence* of the victim. [ (emphasis supplied) ] Article 122, Uniform Code of Military Justice; *United States v. Fullen*, 1 M.J. 853 (A.F.C. M.R.1976). Presence means that possession or control is so immediate that force or intimidation is required to remove the property that is subject to the robbery. The owner must be so near the property that he could retain possession if he were not overcome by violence or fear of violence. *United States v. McCray*, 5 M.J. 820 (A.C.M.R. 1978).

■ The "in the presence" proof is lacking in the alleged robbery of stereo equip-

ment. The evidence is clear that the property was in a barracks considerable distance from the victim's work area. This was not a situation where the goods were in the adjoining room, Manual for Courts-Martial, 1969 (Rev.) paragraph 201, or a circumstance where the owner could effectively retain possession.

Appellate government counsel seek to overcome this deficiency by urging that the release of the room key by the victim amounted to losing control of the property. They contend the room key was a symbol of ownership, and its taking from the owner constituted robbery of the items it represented. We disagree. In *State v. Hayes*, 518 S.W.2d 40 (Mo.1975) the Missouri Supreme Court considered a robbery by symbolic taking. They declined to adopt the suggested theory, stating:

> [Supposing] a robber took at gun point the keys to one's safety deposit box. Would that showing sustain a conviction of robbery of the contents of the box, if, in fact, the contents were not taken; or were taken months later by use of that key?

■ We find merit in the reasoning of the Missouri Supreme Court and reject the Government's theory of robbery by a symbolic taking. The example cited above fits the facts of this case hand in glove. Therefore we hold that the robbery of stereo equipment (Specification 1 of Charge I) cannot be sustained. However, it is well settled that we may properly affirm any lesser included offense supported by the evidence. Article 59(b), 10 U.S.C. § 859(b), Code, *supra*. *United States v. Langford*, 46 C.M.R. 1058 (A.F.C.M.R.1973), *pet. denied* 46 C.M.R. 1323 (1973).[1] Accordingly, we find sufficient evidence to affirm a conviction of the lesser included offense of extortion in violation of Article 127, 10 U.S.C. § 927 of the Code. *United States v. Jackson*, 8 M.J. 511 (A.C.M.R.1979).

1. The government might have avoided the pitfalls just discussed by alleging a robbery of the room key and a subsequent larceny of the items in the room. Further we find the taking of the automobile was from the presence of Airman Robinson but the robbery conviction cannot stand for reasons discussed in this opinion.

## II

Next, the accused alleges and the government concedes, that the military judge erred by not instructing, *sua sponte*, on the lesser included offense of assault with a dangerous weapon under Specification 2 of Charge I. This concession is proper. *United States v. Craig*, 2 U.S.C.M.A. 650, 10 C.M.R. 148 (C.M.A.1953); *United States v. Ransom*, 4 U.S.C.M.A. 195, 15 C.M.R. 195 (C.M.A.1954). It is prejudicial error for a military judge not to instruct on the elements of all lesser included offenses included in the offense charged if there is evidence from which the court could reasonably infer the accused's guilt of the lesser crime. *United States v. Banks*, 7 M.J. 501 (A.F.C.M.R.1979). We purge this error by affirming the lesser included offense of assault with a dangerous weapon, a violation of Article 128, 10 U.S.C. § 928 of the Code. *United States v. McGee*, 1 M.J. 193 (C.M.A. 1975); *United States v. Hunt*, 5 M.J. 804 (A.F.C.M.R.1978).

## III

Finally, the accused urges that the allegation he impersonated an OSI agent (Specification 3 of Charge II) does not state an offense.

In *United States v. Yum*, 10 M.J. 1 (C.M.A.1980), the accused was convicted, pursuant to his pleas, of wrongfully impersonating an Army Criminal Investigation Division agent. The Court of Military Appeals reversed, holding that there must be, not only an allegation and showing of pretense of authority, but also an allegation and showing of an act, which must be something more than merely an act in keeping with the falsely assumed character.

The defense contends the ruling in *United States v. Yum*, *supra*, is totally applicable to the accused's impersonation of an OSI agent. They urge his actions were "mere bravado" and nothing more; hence the specification is deficient. We think not. The specification here alleges something more than a "bare false representation"; it contains an assertion that the accused used an OSI business card to further his false impersonation and questioned a named individual in his assumed capacity as an OSI agent. This is sufficient to overcome the deficiency the Court of Military Appeals found in *United States v. Yum, supra.*

Accordingly, only so much of the findings of guilty of Specification 1 of Charge I and Charge I as finds the accused guilty of the lesser included offense of extortion in violation of Article 127, Code, *supra*; only so much of the findings of guilty of Specification 2 of Charge I and Charge I as finds the accused guilty of the lesser included offense of assault with a dangerous weapon in violation of Article 128, Code, *supra*; and the remaining findings of guilty are affirmed. Reassessing the sentence based on the remaining findings of guilty and those as modified herein and the entire record, we find appropriate only so much thereof as extends to a bad conduct discharge, confinement at hard labor for two years, total forfeiture of all pay and allowances, and reduction to airman basic. The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

POWELL, Senior Judge, and MILLER, Judge, concur.