# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, POND, and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DAVID P. VANBUREN**
**United States Army, Appellant**

ARMY 20220062

Headquarters, 8th Theater Sustainment Command
Michael E. Korte, Military Judge
Lieutenant Colonel Nathan P. Jacobs, Staff Judge Advocate

For Appellant: Captain Sarah H. Bailey, JA; William E. Cassara, Esquire (on brief); Captain Matthew Fields, JA; William E. Cassara, Esquire (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline DeGaine, JA; Major Jennifer Sundook, JA; Captain A. Benjamin Spencer, JA (on brief).

8 March 2024

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Senior Judge:

Appellant alleges four assignments of error, one of which merits discussion and relief.[1] Appellant argues the evidence is legally insufficient to support a finding of guilty for impersonation of an agent of superior authority of one of the armed

---

[1] Appellant raises three other assignments of error: (1) the military judge abused his discretion when he did not recuse himself; (2) the military judge abused his discretion by failing to excuse a biased panel member and (3) appellant was denied the right to a unanimous verdict under the Sixth Amendment and the Due Process and Equal Protection Clauses of the Fifth Amendment. Additionally, as part of his fourth assignment of error, appellant also argues his conviction for abusive sexual contact is factually and legally insufficient.

forces in violation of Article 106, Uniform Code of Military Justice, 10 U.S.C. § 906 [UCMJ]. We agree.

## BACKGROUND

Contrary to appellant's pleas, an enlisted panel sitting as a general court-martial convicted appellant of one specification of impersonating an agent of superior authority and three specifications of abusive sexual contact, in violation of Articles 106 and 120, UCMJ. The panel acquitted appellant of false official statement and sexual assault in violation of Articles 107 and 120, UCMJ. The military judge sentenced appellant to a bad-conduct discharge, confinement for sixteen months, and reduction to the grade of E-1.[2]

Appellant, a Specialist (E-4), was assigned as a military police (MP) officer at Schofield Barracks, Hawaii. At the behest of his platoon leader, appellant befriended Private First Class (PFC) ████, a newly arrived female to the island and his unit. Private First Class ████ had only been on the island for about a month and had only known the appellant for about two weeks before they went out together one night in late February 2021, exploring the post exchange and the nearby beach. The next night, appellant took PFC ████ on a "booze cruise" where he drove around while she drank. After going to the beach again, they returned to appellant's barracks room around 2300. Private First Class ████ changed into appellant's clothes because hers were sandy and they talked, danced, and drank into the early morning. Around 0300 or 0400, PFC ████ became tired and lay down on appellant's bed facing the wall to go to sleep. Appellant then lay down behind PFC ████.

Based on PFC ████'s testimony and testimony from witnesses who observed PFC ████ immediately after, as well as videos and text messages from the appellant to PFC ████ following that night, an enlisted panel convicted appellant of touching PFC ████'s buttocks directly or through her clothes with his penis, of touching PFC ████'s breast, buttocks, inner thigh, and vulva, directly and through the clothing, and of causing PFC ████ to touch the appellant's penis with her hand – all without her consent and with the intent to arouse and gratify the sexual desire of any person. Appellant contests the legal and factual sufficiency of his convictions for the

---

[2] Under segmented sentencing, the military judge sentenced appellant to ten months confinement for each of the abusive sexual contact offenses in Specification 2 and 4 of Charge I to run concurrently, and six months confinement for the abusive sexual contact offense in Specification 3 of Charge I to run consecutively with all other confinement, and no confinement for the impersonation of an agent of superior authority of one of the armed forces in Charge III and its Specification.

abusive sexual contact of PFC ▇. Having reviewed the evidence and the record, we find the evidence is legally and factually sufficient for these offenses.

*Appellant's Impersonation of a Military Police Investigator*

About two months later, appellant was involved in another incident which gave rise to the impersonation offense. A few hours past midnight on 24 April 2021, Sergeant ▇ and Specialist ▇ two on-duty MPs, pulled up behind a black sedan stopped on the side of the road on Schofield Barracks with its hazard lights on and the doors open. Two females were in the driver and passenger seats and indicated two more passengers were across the way. On the other side of the road, SGT ▇ saw the appellant, wearing no shoes, jeans, and a t-shirt, holding an MP vest in his hand, and "escorting" two men across the road. Appellant told SGT ▇ and SPC ▇ that the two men were "strapped" or carrying weapons. The MPs then searched the two men, which revealed no such weapons. The MPs on scene heard appellant say that he was an investigator. Appellant also told one of the MPs that he told the occupants of the black sedan that he was an investigator to try to "diffuse the situation and not have [the MPs] called out there." The two men appellant escorted had no affiliation with the military and were intoxicated and angry – yelling that they did not want to get in their car – but they eventually got into the back seat of the sedan and went on their way. Appellant tried showing the responding MPs a video from a party where he and the two men had been but when SGT ▇ and SPC ▇ began to question appellant about the party, he went from calm to "belligerent" and "disrespectful." Appellant refused to hand over his cell phone without a warrant and the responding MPs apprehended him. Appellant was not intoxicated at the time.

While the appellant was an MP, multiple witnesses testified that appellant was not an investigator with either the Military Police or Criminal Investigation Division (CID) but was a dispatcher. Sergeant ▇ testified that an MP has no authority to detain people while off duty unless they are a noncommissioned officer, which appellant was not. The government introduced into evidence a memorandum from the Provost Marshal of the U.S. Army Installation Management Command-Pacific outlining the authority of personnel performing law enforcement duties while assigned, attached, or under the control of the Provost Marshal Office, United States Army Garrison-Hawaii. The memo, introduced into evidence as Prosecution Exhibit 2 (PE 2), stated that MPs "are authorized to apprehend Soldiers and turn them over to their military chain of command for control" as well as "detain civilians, investigate and/or report, and turn the individual over to the appropriate authorities for disposition." But the memo also provided that when off duty, an MP's "power of apprehension and detention is limited to that of an ordinary private citizen." Two MP NCOs testified it was "common knowledge" that while off duty, an MP is not to conduct any law enforcement activities. If an MP is an investigator, their protective

3

vest identifies them as such. The MP vest appellant was holding in his right hand that night did not have an investigator designation.

The government subsequently charged appellant and the panel convicted appellant of impersonation in violation of Article 106, UCMJ:

> In that Specialist David P. Vanburen, U.S. Army, did, on the island of Oahu, Hawaii, on or about 24 April 2021, wrongfully and willfully impersonate an agent of superior authority of the Army by carrying a Military Police vest while off-duty and claiming to be a Military Police Investigator.

Appellant challenges the legal sufficiency of this offense.

## LAW AND DISCUSSION

"We review the legal sufficiency of convictions de novo." *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)) (citation omitted). "A conviction is legally sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Harrington*, 83 M.J. at 414 (cleaned up). In conducting this review, this court must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991).

*A. Impersonation of an Agent of Superior Authority*

To be convicted of impersonation without the intent to defraud under Article 106, UCMJ, the government must prove beyond a reasonable doubt:

> (1) That the accused impersonated an officer, noncommissioned officer, or petty officer, or an agent of superior authority of one of the armed forces, or an official of a government; and

> (2) That the impersonation was wrongful and willful.

But if the accused is charged with impersonating a government official without the intent to defraud, the prosecution must also prove a third element:

> (3) That the accused committed one or more acts which exercised or asserted the authority of the office the accused claimed to have.

UCMJ art. 106.[3]

At trial, the military judge instructed the panel on all three elements and appellant argues the legal sufficiency of this offense requires the evidence satisfy all three.[4] Conversely, because the prosecution charged appellant with being an "agent of superior authority of the Army," the government argues that to be legally sufficient, only the first two elements must be met. The government further argues that even though the prosecution did not object to the military judge's instructions, this court still reviews the legal sufficiency of the conviction based upon the correct elements of the offense, and not on any erroneously given additional element. *See Musachhio v. United States*, 577 U.S. 237, 243 (2016) (stating when an instruction "incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened

---

[3] The statute specifies three categories of people it is a crime to impersonate:

> (1) an officer, a noncommissioned officer, or a petty officer,
> (2) an agent of superior authority of one of the armed forces; or
> (3) an official of a government.

10 U.S.C. § 906(c).

[4] The military judge instructed the panel of the following elements:

> One, that on or about 24 April 2021, on the island of Oahu, Hawaii, the accused impersonated an agent of superior authority of the Army;
>
> Two, that this impersonation was wrongful and willful; and
>
> Three, that the accused committed one or more acts, which exercised or asserted the authority of the office the accused to claimed to have, by carrying a military police vest while off duty and claiming to be a military police investigator.

command in the . . . instruction"). We agree with the government and find only the first two elements apply in appellant's case. Nevertheless, we find the government did not meet its burden in satisfying the first element, which requires impersonation of an agent of *superior authority* of one of the armed forces.

The elements of Article 106, UCMJ, are based on *United States v. Yum*, 10 M.J. 1 (C.M.A. 1980), a split decision, in which the Court of Military Appeals (C.M.A.) analyzed the offense of impersonation under Article 134 which preceded the current Article 106 offense. *See Manual for Courts-Martial, United States* (2012 ed.),¶86 at A23-23 (stating the Article 134 elements of impersonating a commissioned, warrant, noncommissioned, or petty officer, or an agent or official are based on *United States v. Yum*, 10 M.J. 1 (1980)). Congress moved the impersonation offenses from Article 134 to 10 U.S.C. § 906 by the Military Justice Act of 2016 (MJA). *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114–328, 130 Stat. 2000, 2945 (2016). The statutory language of 10 U.S.C. § 906 mirrors the presidentially defined elements from the previous Article 134 offense – minus the terminal element.

In *Yum*, the appellant was charged with impersonating an Army CID agent to civilian hotel employees without the intent to defraud based on the model specification in the 1969 Manual for Courts-Martial.[5] 10 M.J. at 1-2. In considering whether the specification failed to allege an offense, the court looked at federal courts interpreting the parallel federal statute and, specifically, *United States v. Rosser*, 174 U.S. App. D.C. 79, 528 F.2d 652 (D.C. Cir. 1976). *Yum*, 10 M.J. at 3. In *Rosser*, the court found the federal statute required two elements: (1) falsely pretending to be a United States officer or employee and (2) acting "as such." *Rosser*, 528 F.2d at 656 (quoting 18 U.S.C. § 912). The court stated acting "as such" meant "performing an overt act that asserts, implicitly or explicitly, authority that the impersonator claims to have by virtue of the office he pretends to hold" because "[a]ttempting to exercise pretended authority is far more offensive . . . than is 'mere bravado.'" *Id.*

---

[5] The form specification for impersonation under Article 134 read: "In that_____ did, (at)(on board)_____, on or about _____19_, wrongfully, willfully, and unlawfully impersonate a [(commissioned officer) (warrant officer) (noncommissioned officer) (petty officer) (agent of superior authority) of the (Army) (Navy) (Marine Corps) (Air Force) (Coast Guard)] [an official of the Government of _____] by [publicly wearing the uniform and insignia of rank of a (lieutenant of the_____) (_____)] (showing credentials of _____] [ _____ ] (with intent to defraud _____by_____). *MCM* (1969 ed.), App. 6c, ¶155 at A6-23.

Applying the logic in *Rosser*, the *Yum* majority concluded that in order to stand convicted of impersonation without the intent to defraud under Article 134, UCMJ, there must not only be a pretense of authority but an act which "must be something more than merely an act in keeping with the falsely assumed character." *Yum*, 10 M.J. at 4 (quoting *Rosser, supra* at 657) (internal quotations omitted). The court ultimately found the specification deficient. *Id*. The majority found appellant's misrepresentation as a CID agent to the civilian hotel employees and use of the Eighth Army Criminal Investigation Division address on his hotel guest registration was not enough to meet the "something more" requirement. *Id*. at 1-4. The court concluded appellant's actions amounted to nothing more than a "bare false representation" and set aside the specification. *Id*. at 4.

Subsequent service courts applied *Yum* to similar scenarios of servicemembers impersonating investigative agents. In those cases, the courts applied the third element but found the appellants had, unlike *Yum*, committed an overt act in keeping with the assumed identity sufficient to uphold the convictions. *See United States v. Cagle*, 12 M.J. 736 (A.F.C.M.R. 1981) (finding appellant's use of an Office of Special Investigations (OSI) business card and questioning of a named individual in his assumed character of an OSI agent was a sufficient act exercising or asserting the authority claimed); *United States v. Adams*, 14 M.J. 647 (A.C.M.R. 1982) (finding the conduct more than a bare false representation where appellant misrepresented to military police authorities that he was an undercover Army CID agent in order to escape possible apprehension for attempting to buy narcotics); *United States v. Felton*, 31 M.J. 526 (A.C.M.R. 1990) (finding a legally sufficient overt act where appellant, impersonating a CID agent, used his pretense of authority as a means to intimidate a civilian woman into meeting him at a trailer park where he conducted his extramarital sexual activities).

A few years after *Yum*, the Court of Military Appeals revisited the impersonation offense under Article 134 in a case where the appellant impersonated a noncommissioned officer. *United States v. Pasha*, 24 M.J. 87 (C.M.A. 1987). The court distinguished the case from *Yum* in that (1) the appellant, unlike Yum, impersonated someone in the "category of persons who under the Manual provisions cannot be impersonated with impunity,", i.e., an officer, warrant, petty, or noncommissioned officer (NCO) and (2) appellant played the role of an NCO "by the overt act of publicly wearing the uniform and insignia of rank of a Sergeant First Class on Fort McPherson, a military installation." *Id*. at 92.

Service courts of criminal appeals came to similar conclusions where the appellant impersonated a higher-ranking military member to other servicemembers. In *United States v. Reece*, the court found appellant's impersonation of an officer to two enlisted members "openly and clearly claimed authority which an enlisted member is required to respect" and that a "spirit of confusion and disorder and lack of discipline in the military would ensue if enlisted members were permitted under

pretense of authority to assume the role of officers or masquerade as persons of higher rank." 12 M.J. 770, 773 (A.C.M.R. 1981). Similarly, in *United States v. Wesley*, the court found appellant's impersonation of an NCO to Privates in basic training was legally sufficient, stating "[t]he unique relationship of noncommissioned officers and enlisted subordinates requires special protection from would-be imposters." 12 M.J. 886, 887 (A.C.M.R. 1981). As in *Reece*, the court in *Wesley* emphasized the adverse impact to good order and discipline and the "unusually significant" consequences of impersonating officers and NCOs "in a military setting, in terms of obedience, respect, and personal relationships. . . ." *Id.* The court noted that prior to *Yum*, impersonating an officer or noncommissioned officer did not require an additional act beyond the false pretense and was a viable Article 134 offense because of the adverse impact to good order and discipline. *Id.* *Wesley* further distinguished *Yum* in that Yum's misrepresentation was to civilian hotel employees in a civilian community – "who may or may not have been impressed by the false identity" – which was wholly different from Wesley's impersonation of a noncommissioned officer on a military installation to a basic trainee. *Id.; but cf. United States v. Hall*, 25 M.J. 628 (A.F.C.M.R. 1987) (finding no assertion of authority where appellant claimed he was a captain and a pilot to his prospective landlord and others in the nearby civilian community).

In announcing its rule, the *Yum* majority did not make a distinction between impersonating an officer, a noncommissioned officer, petty officer, agent, or government official when stating that there must be something more than merely an act in keeping with the falsely assumed character. 10 M.J. at 3-4. Neither the old presidentially defined Article 134 offense nor the current Article 106 statute define "agent of superior authority of one of the armed forces" or "official of a certain government." *Compare MCM* (2008 ed.), pt. IV, ¶86, *with MCM* (2019 ed.), pt. IV, ¶39. In *Yum*, Chief Judge Everett, in his concurring opinion remarked that the meaning of "agent of superior authority" was unclear, but that it was probably a shorthand for the language in the parallel federal statute, 18 U.S.C. §912, for "an officer or employee acting under the authority of the United States or any department, agency or officer thereof." 10 M.J. at 5. Yet, "agent of superior authority" appeared in the sample specifications of the Articles of War in effect before the passage of the parallel federal statute whereas "official of a certain government" did not. *See Manual for Courts-Martial, U.S. Army* (1949 ed.), ¶158 at 330.[6] Neither term – "agent of superior authority" nor "official of a certain government" – specifically appear in 18 U.S.C. § 912.

---

[6] The form specification for "Impersonating an officer, etc." under Article of War 96 stated: "In that_____ did, at_____, on or about _____19_, wrongfully and unlawfully impersonate an (officer) (noncommissioned officer) (agent of a superior authority) of the Army of the United States by publicly wearing

(continued . . .)

In his concurrence, Chief Judge Everett also remarked that "it was apparently alleged that Yum was representing himself to be an 'agent of superior authority.'" *Yum*, 10 M.J. at 5. Yet, the President's interpretation of the offense in subsequent versions of the *MCM* apply a third element only to instances where an accused impersonates a government official. *See MCM* (2005 ed.), ¶ 86(b)(3); *see also* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3a-30-1, (29 February 2020) [Benchbook].[7] When Congress enacted the statutory language of the new Article 106, it also only applied the additional element to impersonation of "an official of a government." 10 U.S.C. § 906. Thus, the government argues that the third element of committing an act exercising and asserting the authority of the office impersonated only applies to impersonation of a government official and does not apply to the appellant's impersonation of an agent of superior authority of one of the armed forces, the language the government used on the charge sheet.

Both the 1949 *MCM* and the 2019 *MCM* refer to "superior authority" when discussing the forwarding of charges, the power to grant immunity, or appoint or convene a court-martial.[8] Looking at the plain meaning of these words in this

---

(. . . continued)
the uniform and insignia of the rank of (captain) (first sergeant) ( -------- ) [(with the intent to defraud _____ by_____)]. *MCM* (1949 ed.), ¶ 158, at 330.

[7] We recognize that "the Benchbook is not binding as it is not a primary source of law" but "is intended to ensure compliance with existing law." *United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013).

[8] *See e.g, MCM*, 2019, Rule for Courts-Martial [R.C.M.] 401(c)(2) discussion (stating when forwarding charges to a superior commander the transmittal should include "any other matters required by superior authority"; R.C.M. 407(b) (stating for charges involving national security matters "the commander may dismiss the charges, authorize trial of them, or forward them to a superior authority"; R.C.M. 704(c)(3) (stating "[t]he authority to grant or delegate the authority to grant immunity may be limited by superior authority"), R.C.M. 1302 (stating it is the convening authority's discretion whether to forward the charges for a summary court-martial to a "superior authority" when they are the accuser); Military Rule of Evidence 506(d) (stating "[t]he privilege for records and information of the Inspector General may be claimed by the immediate superior of the inspector general officer responsible for creation of the records or information, the Inspector General, or any other superior authority"); *MCM*, 2019, pt. V, ¶7a (discussing a servicemembers right to appeal any Article 15 punishment "through the proper channels to the next superior authority") *and MCM*, 1949, ¶5a ("When any commander authorized to appoint general courts-martial is the accuser or the

(continued . . .)

context, "superior authority" would indicate someone in command or possessing the right to command or make decisions. An "agent" is typically someone who is authorized to act on another's behalf, represent them, or exercise their authority. Within the Army, an agent of superior authority might be an executive officer or deputy commander for a brigade, or an aide-de-camp for a general officer who has the delegated authority to act for or represent the commander in certain situations.

One can certainly think of examples in which impersonating an agent of superior authority results in the same predictable spirit of confusion, disorder, and lack of discipline within the military that would result if a servicemember impersonated an officer, noncommissioned officer, or petty officer. A lieutenant impersonating a brigade commander's executive officer or deputy commander, or a warrant officer impersonating the aide-de-camp of a commanding general or a combatant commander are situations that could easily create confusion, disorder, and indiscipline within the ranks. Those scenarios are akin to a specialist impersonating an officer, or a private masquerading as a noncommissioned officer – they are the type of persons who cannot and should not be impersonated with impunity within the military and were categories of persons whose impersonation was specifically contemplated as punishable since the Articles of War. Since then, Congress made impersonation a statutory offense and applied the third element only to the third category of impersonated persons - an official of a government. Thus, under the plain reading of the statute, we agree with the government that the third element does not apply to the impersonation of an agent of superior authority of one of the armed forces. Therefore, the government was only required to prove the first two elements of the offense: (1) that the accused impersonated an agent of superior authority of the Army; and (2) that this impersonation was wrongful and willful.

*B. Legal Insufficiency of Impersonation of an Agent of Superior Authority*

Since the government charged appellant with impersonating an agent of superior authority, this court must address whether a Military Police investigator can ever be an agent of superior authority. It is not obvious that an investigative agent would necessarily elicit the same automatic obedience to orders and respect for

---

(. . . continued)
prosecutor in a case the court shall be appointed by competent superior authority."); *MCM*, 1949, ¶5b (stating that the commander of a detached battalion or unit is "primarily the one to be looked to by superior authority as the officer responsible for the administration of the discipline of the soldiers composing the unit"); *MCM*, 1949, ¶5c (stating "summary courts-martial may in any case be appointed by superior authority"); *MCM*, 1949, ¶34f (stating the commanding officer will report any delays in forwarding general court-martial charges to "superior authority").

authority as that commanded by higher ranking military personnel. Courts reviewing instances of impersonating investigative agents appear to treat the offense as impersonating a government official because each court has applied *Yum*'s third element requiring the appellant to have committed one or more acts which exercised or asserted the authority of the office claimed in order to be legally sufficient. *See Yum*, 10 M.J. 1; *Felton*, 31 M.J. 526; *Adams*, 14 M.J. 647; *Cagle*, 12 M.J. 736.

Yet, MPs and MP investigators have special authority to apprehend other servicemembers, regardless of rank. *See* R.C.M. 302(b)(1). For instance, an E-4 MP has authority to apprehend an officer suspected of committing a crime. *Id. See also*, UCMJ art. 7 (permitting persons authorized by service regulations to apprehend persons subject to the UCMJ). To a civilian with no affiliation with the military – like the two men from the black sedan or the hotel employees in *Yum* – an MP or CID investigator would more likely qualify as a government official rather than an agent of superior authority of the armed forces, because to a civilian, the impersonated person likely does not have authority over the civilian nor are they superior to the civilian. Therefore, the category of person impersonated may depend upon the circumstances and to whom the impersonation is made. Given the context of "superior authority" within the *MCM*, it is not clear that an MP or MP investigator would incontrovertibly qualify as an "agent of superior authority" of the Army on its face.

We now turn to the legal sufficiency of the government's evidence elicited at trial. The government introduced PE 2, which is a memorandum applicable to all military personnel and civilian employees performing law enforcement duties on the installation, outlining their authority and powers of apprehension. The memorandum states "MP/DACP/DASG" (Military Police, Department of the Army Civilian Police, Department of the Army Security Guards) are "agents of an Installation Commander." However, absent from that policy is any mention of military police *investigators* – the policy only addresses the authority and limitations of "MP/DACP/DASG" personnel. The government provided testimony that an MP investigator was merely an additional skill one could obtain by attending training. Further, the government did not provide any additional policy or regulations showing the designation of military police investigator is a position superior to that of a military police officer. As such, the evidence elicited at trial supports the conclusion that a soldier designated as military police, or a military police investigator, are of the same authority under the policy memorandum admitted at trial. Interestingly, government appears to have used this memo only to show appellant had no law enforcement authority while off-duty. Prosecution Exhibit 2 states that all off-duty MPs only have the detention powers of those of an ordinary private citizen. However, appellant was a military police officer when he stated he was an "investigator" and the MP vest he held was his own vest. Given appellant was already an agent of the installation commander as a military police officer, his actions were at most evidence he was asserting to be an agent of the *same or*

*parallel* authority within the same organization – which is not a crime under Article 106, UCMJ. Therefore, even when viewed in the light most favorable to the prosecution, we find no rational trier of fact could have found the elements proven beyond a reasonable doubt for this offense. At best, appellant's actions constituted a violation of a lawful general order or dereliction of duty under Article 92, UCMJ.[9] We therefore find this charge to be legally insufficient and provide relief in our decretal paragraph.[10]

## CONCLUSION

Charge III and its Specification are DISMISSED. The remaining findings of guilty and the sentence are AFFIRMED.[11] [12]

Judge PARKER concurs.

Judge POND dissenting in part:

I agree with my colleagues that under a plain reading of the statute, the government is not required to prove appellant committed one or more acts that exercised or asserted the authority of the office he claimed to have to stand convicted of impersonation of an agent of superior authority of one of the armed forces. But I disagree that the evidence is legally insufficient.

---

[9] We note that the paragraph 10 of the policy states that individuals who violate provisions of the policy may be punished under Article 92 of the Uniform Code of Military Justice.

[10] Appellant has not raised factual sufficiency for this court's review. Because appellant's offenses all occurred after 1 January 2021, the amended standard of review under Article 66(d)(1)(B), UCMJ, applies and the appellant is required to make a specific showing of a deficiency of proof for this court to determine whether the finding is correct in fact. Under this new standard, where the appellant has not made the required showing, we will not review for factual sufficiency.

[11] The Entry of Judgment is corrected to include the ACCA case number and Blocks 34a and 34b of the Statement of Trial are corrected to reflect "Yes" as the appellant was convicted of a sex-related offense that requires an assignment consideration code of L3 or L8.

[12] We affirm the sentence in this case pursuant to *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We also have the benefit of knowing with certainty the military judge sentenced appellant to no confinement for Charge III and its Specification.

Where we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution in determining whether any rational trier of fact could have found all essential elements beyond a reasonable doubt, I find the evidence is legally sufficient.

The evidence of record shows in this case that military police investigators on Schofield Barracks were agents of a superior authority of the armed forces – the installation commander. The Provost Marshal memo the government introduced at trial does not specifically mention investigators, but it refers to MPs and further states the policy "applies to all personnel, civilian and military, performing Law Enforcement or Law Enforcement support operation duties while assigned, attached or otherwise under the control of the Provost Marshal Office, United States Army Garrison-Hawaii." At trial, MPs testified being an investigator was a separate role they performed that allowed them to work certain calls and accidents that "normal MPs" cannot and that investigators were assigned within their detachment – such as traffic and road investigators. A reasonable conclusion is an MP investigator is just a type of MP and as such, the policy memo also applies to MP investigators. Because the memo states that such law enforcement personnel are "agents of the installation commander," and that their "authority is based on police, federal or military, being an agent of the Installation Commander," I would find there is sufficient evidence here to satisfy the element that an MP investigator was an agent of the installation commander. Further, I find that an installation commander meets the definition of a superior authority of the Army, being a commander who is superior to both appellant and the responding MPs to whom appellant's impersonation was made.

As appellant notes, appellant identified himself simply as an "investigator," not as "a Military Police Investigator," as alleged on the charge sheet. Yet, an investigator still connotes an official or agent of law enforcement and these events occurred on a military installation, indicating an affiliation with the military or armed forces. And appellant was holding an MP vest which belonged to him, but when holding the vest while claiming to be an investigator to other MPs, appellant's words and actions implied he was an investigator *with* the MPs. Therefore, I do not find the specification fails simply because appellant identified himself only as an "investigator."

While the third element does not apply, appellant's actions are more than mere bravado or jest. A rational factfinder could have concluded that the two belligerent and agitated civilian men would not have allowed appellant to escort them across the street and towards the responding MPs had he not claimed to be an investigator. A rational factfinder could also have concluded that the responding MPs would not have searched the men for weapons if appellant had not claimed he was an investigator. And perhaps, it would have had the same effect if appellant had merely stated he was an MP, but he did not. He claimed he was an investigator and cloaked himself with authority he did not have. Therefore, I find the evidence of the

record to be legally sufficient for this offense and I would affirm Charge III and its Specification.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court